◼ In the Matter of FRIENDS LAKE PROPERTY OWNERS ASSOCIATION, INC., Appellant, v NORMAN GAMBLE et al., Constituting the Planning Board of the Town of Chester, Respondent, and ARTHUR P. WALES et al., Intervenors-Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Walsh, Jr., J.), entered August 19, 1982 in Warren County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Town of Chester Planning Board granting approval of a subdivision. Petitioner initiated the instant article 78 proceeding to review a determination of the Planning Board of the Town of Chester, Warren County, granting approval for the development of 29 nonshorefront building lots, and one shorefront lot providing access to Friends Lake for the said 29 lots, and 13 other nonshorefront lots whose development the planning board had previously approved. The parties are in agreement that the controlling provision of the zoning ordinance of the Town of Chester is section 6.1146, which specifies the minimum lot area and width requirements for shorefront lots intended to serve as waterfront access to other, nonshorefront residential lots. Under that section, the minimum waterfront access lot area is one-half acre, and the minimum "shore frontage" is 100 feet, to serve 10 lots without shore frontage. A mathematical formula is also set forth for increasing the minimum area and shore frontage required for the access lot when it is intended to serve more than 10 nonshore units. The parties are also in agreement that under the provisions of section 6.1146 the proposed development under consideration would require a waterfront access lot having a shore frontage of 315 feet. The issue in dispute is the method of measurement of the requisite shore frontage. Petitioner urges that the shore frontage of the access lot required under the ordinance is to be determined by measuring the straight line distance connecting the shorefront ends of its side lot lines. This mode would yield a shore frontage of some 237 feet, permitting development of only 15 additional nonshorefront lots, rather than the 29 approved by the planning board. Petitioner derived this "straight line" method of measurement from

section 6.112 of the zoning ordinance and its table for minimum lot areas, widths and depths in residential districts within the Town of Chester. Footnote 6 of the table provides that with respect to a shorefront lot, the minimum width at the shoreline "shall be measured along a straight line connecting the shorefront ends of the side lot lines". The planning board, however, used a different method to measure the required shore frontage of the access lot in question, namely, the linear measurement of the actual shoreline (as it winds and turns) of the lot. "Shoreline" is defined in section 3.1 of the zoning ordinance as the "line separating the land area from the water area" as shown on a certain United States geological survey. By this method, the shore frontage of the access lot was found by the planning board to total 320 feet, permitting approval of the development of all of the 29 additional nonshore-front lots sought in the proposal. Respondents argue that the planning board was not compelled to apply the straight-line method set forth in the table to section 6.112. They point to language in section 6.112 which states that the minimum areas and lot dimensions in the table apply "except as hereinafter modified". Moreover, section 6.1146, dealing with minimum area and dimensions for waterfront access lots, is a subdivision of section 6.114, which is entitled "Exceptions to the provisions of sections 6.112 and 6.113". Therefore, respondents contend, the table made part of section 6.112 which contains the straight-line method of measuring shore frontage is entirely superseded with respect to an access lot, and the planning board was at liberty to look to the general definition of shoreline and apply a linear method of measurement of shore frontage. In our view, the planning board's use of a linear measurement of the shoreline of the lot in question to determine its shore frontage is not supported by either the language or purpose of the applicable sections of the zoning ordinance. "Shoreline" itself is not a term employed in section 6.1146, and nowhere either in that section or elsewhere in the ordinance is it used interchangeably with "shore frontage". "Shoreline" is an element in the definition of the depth of a waterfront lot (see Definitions, § 3.1) and is used to establish the requisite building line and distance for location of a septic system in the case of shorefront property (§ 5.12). Contrariwise, "shore frontage", as used in section 6.1146, clearly connotes the width of a lot at its waterfront side. The heading of that section is "Increased minimum lot area and *width* requirements for shorefront lots" (emphasis added). As a matter of common usage, the meanderings of an irregular shoreline ordinarily would not be considered in determining the width of a lot at the waterfront. The straight-line measurement from the ends of the side lines is the only method expressly and repeatedly used in the ordinance for determining the width of a lot at the shoreline (see tables to §§ 6.112, 6.113 and 6.212). Nor can section 6.1146 be construed as making the table to section 6.112 entirely inapplicable, as respondents contend. The "minimum lot area and width requirements" for shorefront access lots which are "increased" under section 6.1146 can only be referable to the minimums set forth in that table. The intent clearly was to modify the area and dimensional requirements set forth in the table, not totally to supersede it. Finally, adopting the linear measurement of the shoreline to determine the required shore frontage will lead to results inconsistent with the purpose of section 6.1146. The table to section 6.112 establishes a minimum width for residential shorefront lots of 100 feet, measured by the straight-line method. The express purpose of section 6.1146 is to require a shorefront access lot of greater width, if it serves more than 10 nonshorefront units. Obviously, the linear measurement of the shoreline of a waterfront lot will always be greater than the measurement of a straight line connecting the shorefront ends of its sidelines. Thus, in the case of a waterfront lot serving as

access to units marginally greater than 10 in number, the likelihood is that the linear method adopted by the planning board will result in a minimum shorefrontage *narrower,* not wider, than that of a waterfront residential lot under section 6.112. For all of the foregoing reasons, we conclude that the planning board misapplied the clear intendment of the zoning ordinance with respect to the minimum width of lots intended to serve as waterfront access; and for that reason its determination must be annulled (see *H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 233-234; *Matter of Hohmann v Thomsen,* 32 AD2d 669, 670). Judgment reversed, on the law, with costs, determination annulled, and matter remitted to the Planning Board of the Town of Chester, Warren County, for further proceedings not inconsistent herewith. Sweeney, J. P., Kane, Casey, Yesawich, Jr., and Levine, JJ., concur.